**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISON**

**THERESE GAMBLE,**

       **Plaintiff,**

**vs.**                                                    **Case No.:**

**UNIVERSITY OF NORTH FLORIDA;**

       **Defendants.**

_____

**COMPLAINT AND DEMAND FOR JURY TRIAL**

    Plaintiff, THERESE GAMBLE, brings this action under the Rehabilitation Act seeking monetary damages, attorney's fees and costs and alleges the following:

**GENERAL ALLEGATIONS**

    1.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

    2.     Venue is proper under 28 U.S.C. §1391(b). On information and belief, one or more Defendants reside in this judicial district, and a substantial portion of the events giving rise to the claims asserted herein occurred within this district.

**PARTIES**

    3.     Plaintiff, THERESE GAMBLE, is a citizen of the United States and resident of Duval County Florida.

    4.     Defendant, UNIVERSITY OF NORTH FLORIDA ("UNF:"), is a public state university for the State of Florida, located in Jacksonville Florida.

1

## FACTUAL ALLEGATIONS

5.      Plaintiff's claims arise out of acts of disability discrimination and retaliation that culminated in her dismissal from UNF's Educational and Doctoral Leadership Program.

### GAMBLE's Disabilities and Enrollment in UNF's Doctoral Leadership Program

6.      In 2003, GAMBLE obtained a Bachelor of Business Administration from Eduard Waters College. She went on to obtain a Master of Education (M. ed.) and an Executive Masters Degree in Business Administration and Management.

7.      GAMBLE has held a number of professional positions in the education and community outreach field, including working as a high school English teacher where she served as PTA president; working in administrative roles in faith-based educational programs, serving as an Employment Security Representative for the State of Florida, and appearing as a co-host on the *Talk of the Town* television program.

8.      On or around October 2013, GAMBLE began experiencing severe pains in her back.

9.      Shortly thereafter, GAMBLE was diagnosed with severe fibromyalgia, memory loss, arthralgias of multiple sights, and vertigo.

10.     As a result of these conditions, GAMBLE is unable to walk more than 200 feet at one time and has problems sitting for long periods due to muscle and joint pain.

11.     Due to her memory loss, GAMBLE requires written instructions to refresh her recollection.

12.     Stressful conditions or life events can exacerbate GAMBLE'S symptoms.

13.     Struggling with these symptoms, GAMBLE decided to leave her full-time position working for the State of Florida in 2014.

2

14.     GAMBLE decided to use this time to pursue a doctoral degree. After evaluating different programs, she applied and was accepted into UNF's Educational and Doctoral Leadership Program.

15.     A substantial reason for choosing this program was the fact that her husband was employed by UNF at the time. As the spouse of an employee, she qualified for a tuition scholarship if she maintained a 3.0 grade-point average. Without this scholarship, GAMBLE would have been unable to pursue a doctoral degree.

16.     GAMBLE enrolled in the program beginning in the Fall 2015 semester.

17.     Upon her enrollment, she identified herself as a student with a disability. She registered with UNF's Disability Resource Center (DRC) and was approved for accommodations.

18.     During the Fall 2015 semester, GAMBLE was received individualized student accommodations of priority registration and the use of a padded table/chair in the classroom.

19.     That semester, GAMBLE enrolled in two courses: Foundations in Research, for which she received a grade of A; and Education Leadership, for which she received a grade of A-.

**Requests for Medical Withdrawal During the Spring 2016 Semester**

20.     Despite strong academic performance in her first semester, during the Spring 2016 semester, GAMBLE's condition began to increase in severity and create difficulties for her in completing her course work.

21.     In January 2016, GAMBLE changed physicians, which resulted in a different medication regimen than what she was accustomed to.

22.     On February 5, 2016, GAMBLE was admitted to the emergency room due to complications caused by her vertigo and fibromyalgia.

23.     During the course of the Spring 2016 semester, she had to receive two epidural injections to alleviate her symptoms.

24.     GAMBLE also had difficulty with mobility, causing her to miss several classes.

25.     On February 18, 2016, GAMBLE submitted the first paper for her Cultural Social Foundations Class, taught by Professor Ali-Khan.

26.     Professor Ali-Khan refused to provide feedback on the paper, because the deadline for submitting an outline had already passed.

27.     At Professor Ali-Khan's recommendation, GAMBLE sought assistance from UNF's Writing Center to assist her with her academic writing.

28.     GAMBLE had previously contacted the writing center to identify and establish a tutor who could assist her with academic scholarship writing after she had discussed the strengths and weaknesses of her writing with her Fall 2015 semester instructors.

29.     The Writing Center determined that GAMBLE's challenges with the essay were not with the assignment in and of itself, but with Professor Ali-Khan's ability to respectfully provide details and clarify instruction—some of which GAMBLE was not able to receive with the rest of the class due to her medical absences.

30.     The Writing Center further found that GAMBLE's medical condition was a contributing factor to her ability to write, especially when under intense stress.

31.     The Writing Center provided UNF faculty, including Caroline Ali-Khan, with a letter detailing these findings.

32.     On March 30, the DRC updated GAMBLE's accommodations to include flexible attendance due to her disability.

4

33.     GAMBLE determined that she was unable to complete the requirements of her Cultural Social Foundations Class due to the progression of her medical condition that semester and the cumulative effect on her workload caused by missing classes earlier in the Semester.

34.     On April 6, 2016, GAMBLE submitted a request for a partial Medical Withdrawal from her Cultural Social Foundations Class.

35.     Per UNF's policies, students are permitted to medically withdraw from a course of they are unable to complete their coursework due to medical reasons. This results in the student receiving a grade of Incomplete for that course, which does not affect their GPA.

36.     GAMBLE's request for a medical withdrawal was accompanied by a letter in support of the request by the Writing Center.

37.     GAMBLE's request also included a letter from her treating medical provider at Baptist Primary Care. The request stated that given the severity of GAMBLE's symptoms and her inability to function academically, she needed to medically withdraw from the course. The letter noted that the onset of her symptoms was early February 2016. The letter further recommended that Ms. GAMBLE's course load be reduced to one course per semester vs. two courses.

38.     On April 20, 2016, Gamble was told that her request was denied. She did not receive an explanation for why UNF denied her request.

39.     On April 26, 2016, Gamble submitted an appeal of the medical denial and included her medical records documenting her condition with her appeal.

40.     On April 27, 2016, Gamble met with UNF faculty and administration regarding the appeal. She explained that her condition was unpredictable and that she did not want to be penalized due to a medical flare up that was beyond her control.

41.     Without a partial medical withdrawal, GAMBLE received a grade of F in her
Cultural Social Foundations course. She received a grade of A in her other course that semester,
Leadership Group and Teams.

42.     GAMBLE was able to complete her other course during the Spring 2016 semester,
because the course only met on specific Saturdays through out the semester and used a student
assistant who was available to provide clarifications regarding assignments.

43.     As a result of her grade of F in her Cultural Social Foundations Course,
GAMBLE's grade-point average dropped to a 2.925. In order to maintain her scholarship,
GAMBLE needed to maintain a 3.0 GPA.

**August 2016 Complaint for Disability Discrimination**

44.     UNF allowed Gamble to enroll in classes Summer 2016 semester despite falling
below a B average.

45.     In order to improve her GPA that resulted from the denial of her request to
withdraw from the Cultural Social Foundations Course, GAMBLE enrolled in a full-semester
course load for the Summer of two classes, even though her medical provider recommended she
only take one course pers semester.

46.     On May 10, 2016, UNF's Office of Student Affairs notified GAMBLE that her
grade appeal for the Cultural Social Foundations Course was denied. Once again, UNF did not
provide GAMBLE a reason for denying her request to withdraw from the course.

47.     As a result of the failing grade she received in her Cultural Social Foundations
course, GAMBLE worked and studied tirelessly to raise her grade-point average to the 3.0 average
necessary to maintain her scholarship. This required her to spend many twelve-plus hour days

studying, often staying up all night to compensate for time lost as a result of her medical conditions.

48.     GAMBLE ultimately earned a grade of A in her Writing for Scholarship Class and a grade of B+ in her Organizational Theory class. This raised her grade point average to 3.167.

49.     On August 3, 2016, GAMBLE submitted a formal appeal for her Spring 2016 Cultural Social Foundations Course based on UNF's failure to grant her a partial medical withdrawal.

50.     On August 5, 2016, GAMBLE also submitted a formal complaint stating that UNF violated Title IX and the American's with Disabilities Act ("ADA") for failing to grant her request for a partial medical withdrawal.

51.     On August 15, 2016, GAMBLE revised her grade appeal to include allegations that the failure to grant her partial medical withdrawal violated UNF's ADA compliance policy.

52.     On August 18, 2016, UNF informed GAMBLE that they were going to hire an outside consultant to investigate GAMBLE's disability discrimination complaint.

53.     However, UNF did not actually hire an outside investigator to investigate the allegations until September 23, 2016. UNF did not provide a reason for the delay in investigating GAMBLE's complaint and failed to conduct an investigation within the time period provided by their own policies.

54.     On October 14, 2016, the consultant interviewed GAMBLE.

55.     The consultant found that GAMBLE's allegations of disability discrimination were without merit. However, the consultant did find that GAMBLE should have been granted a medical withdrawal from her Spring 2016 Cultural Social Foundations course.

56.     The independent consultant did not conduct any investigation into GAMBLE's Title IX or retaliation allegations.

57.     Furthermore, UNF's policies require investigators to prepare a written summary of their findings. However, the independent consultant in Ms. Gamble's case never prepared such a report. Additionally, the consultant did not keep a file that clearly reflected the content of her interviews with UNF staff or indicate when those interviews occurred.

58.     While the investigation into her discrimination and retaliation complaint was ongoing, GAMBLE was enrolled in three classes during the Fall 2016 semester: Educational Leadership Change, Psychosocial Aspects of Learning, and Management of Non-Profit Organizations.

59.     GAMBLE struggled with her course load during the Fall 2016 semester. In addition to taking more courses than her medical provider's recommended to offset the F on her transcript caused by her Spring 2016 Cultural Social Foundations Course, GAMBLE's father also passed away, causing her to undergo more stress and the symptoms of her medical condition to increase.

60.     During this time, GAMBLE also began to experience difficulties in her Fall 2016 Psychosocial Aspects of Learning course. This Course was taught by Professor Danial Dinsmore, whose office is situated next to Professor Ali-Khan

61.     Plaintiffs issues with the Psychosocial Aspects of Learning course were the result of absences caused medical condition, including a procedure on her back with a two-week recovery period.

62.     On or around October 16, 2016, GAMBLE met with the Interim Chair of UNF's Educational and Doctoral Leadership Program, Dr. Cristopher Jansen. During that meeting, Dr.

Jansen encouraged GAMBLE to leave the program. Dr. Jansen told GAMBLE that her credentials were already impressive and there was no reason she needed a doctoral degree.

63.     In November 2016, GAMBLE's father was admitted into hospice.

64.     GAMBLE had previously contacted Professor Dinsmore regarding her medical issues and her father's health. However, Professor Dinsmore did not permit her to turn in an assignment she had missed as a result of these issues, causing her grade in the course to drop to a D.

65.     In December 2016, GAMBLE's father passed away.

66.     On December 12, 2016, GAMBLE e-mailed UNF faculty and administrators, stating that she felt she was being forced out of the program because of her ongoing complaint regarding her Spring 2065 Cultural Social Foundations Course.

67.     UNF administrators assured GAMBLE that she was not being forced out and instructed her to file a grade appeal of her Fall 2016 Psychosocial Aspects of Learning course if she disagreed with her grade.

68.     GAMBLE then spoke with a UNF ombudsman, who informed her that the University had a policy to allow students to petition to withdraw from a course in the event of a close family member's death. Pursuant to that policy, GAMBLE filed a petition to withdraw from her Fall 2016 Psychosocial Aspects of Learning course.

69.     On December 14, 2016, UNF administrators informed GAMBLE that the outside consultant had recommended UNF grant GAMBLE's request for medical withdrawal from her Spring 2016 Cultural Social Foundations course and that the University would follow that recommendation.

70.     As such, UNF changed GAMBLE's grade for the Spring 2016 Cultural Social Foundations from an F to a Medical Withdrawal.

**Placement on Academic Probation During the Spring 2017 Semester**

71.     At the end of the Fall 2016 semester, GAMBLE received grades of

72.     On January 3, 2017, GAMBLE received a letter indicating she was being placed on academic probation.

73.     The letter informed GAMBLE that, according to the doctoral policy manual, any student who receives a grade of C or below in two or more courses will be placed on academic probation.

74.     A student placed on academic probation who does not reach a grade-point average of 3.0 within the next academic term or who receives a grade of D or F during that term, is eligible for dismissal from the program.

75.     The only courses in which GAMBLE received a grade of C or below were the F she received in the Spring 2016 Cultural Social Foundations Course (which by that time had already been overturned and replaced with a Medical Withdrawal) and the D she received in her Fall 2016 Psychosocial Aspects of Learning Class (which was the subject of a petition for withdrawal).

76.     Indeed, Dr. Jansen later admitted that he considered GAMBLE's grade of F in the Spring 2016 Cultural Social Foundations Course when he decided to place GAMBLE on academic probation.

77.     Despite the fact that, under UNF's own policies, GAMBLE did not qualify for academic probation, she remained on probation for the remainder of the Spring 2017 semester.

10

**Administrative Suspension and Dismissal from UNF**

78.     Being erroneously placed on academic Probation only increased the stress on GAMBLE, causing her symptoms to worsen and unnecessarily struggle with her academic performance during the Spring 2017 semester.

79.     GAMBLE enrolled in four classes during the Spring 2017 semester:  Inquiry Into Research in Education Leadership (a one-credit course), Research Education Qualitative Methods, Research Education Quantitative Methods and Nonprofit Financial Management.

80.     This course load was well in excess of what had been recommended by GAMBLE's medical provider, but she felt it was necessary in order to raise her GPA to the level necessary to lift the academic probation.

81.     Ultimately, GAMBLE received a grade of F in Inquiry into Research in Education Leadership; a C+ in Research Education Qualitative Method; and a B- in Nonprofit Financial Management.

82.     Because GAMBLE was erroneously placed on Academic Probation in the Spring 2017 semester, these grades made GAMBLE eligible for dismissal or suspension.

83.     Had GAMBLE been properly taken off academic probation when her Spring 2016 grades were amended, GAMBLE would have had another semester to improve her grades.

84.     On May 2, 2017, GAMBLE sent an e-mail to UNF's administration indicating that she intended to petition the removal of her grade of D in her Fall 2016 Psycho-Social Aspects of Learning Course, due to the death of her father.

85.     That day, GAMBLE also sent an email alleging that she felt she had been retaliated against during the Spring 2017 semester because she had challenged UNF faculty and administration during her request for a medical withdrawal in Spring 2016.

86.     On May 3, 2017, UNF administration sent GAMBLE a letter indicating that she was suspended from the Educational Leadership Program due to her academic performance during the Fall 2016 semester.

87.     The letter did not address the fact that GAMBLE had just appealed her grade of D in the Fall 2016 Psycho-Social Aspects of Learning Course. Indeed, UNF never responded or took any action with regard to this appeal.

88.     On June 6, 2017, UNF's doctoral teaching faculty met to determine whether GAMBLE would be dismissed from the program. They held the meeting when GAMBLE was not available due to medical reasons, and did not consult with her before making their decision.

89.     The doctoral teaching faculty committee consisted of ten (10) faculty members. Six (6) of the ten faculty members had received notice of GAMBLE's complaints alleging discrimination or retaliation.

90.     The panel ultimately decided to dismiss GAMLBE from the Educational Leadership Program.

91.     The reason for their determination cited in the meeting notes was that GAMBLE's writing skills made it unlikely she would be successful completing her coursework, exams, and dissertation.

92.     The panel did not consider any of GAMBLE's coursework or academic writing in making this determination.

93.     Rather, panel read and criticized GAMBLE's writing technique in one of her e-mailed grade appeals, one in which she raised allegations of disability discrimination.

94.     Furthermore, Professor Ali-Khan spoke at length about GAMBLE's performance during the Spring 2016 Cultural Social Foundations course, even though UNF had granted GAMBLE a medical withdrawal from that course.

95.     The purpose of a Medical Withdrawal is to support a student who has missed significant time from class due to illness, hospitalization, or inpatient treatment. Despite receiving a Medical Withdrawal for this course, GAMBLE's performance during the course was held against her during the meeting.

96.     The Spring 2016 Cultural Social Foundations course was also the only course during which Professor Ali-Khan instructed GAMBLE.

97.     According to UNF policy, any doctoral faculty may attend the review panel to determine whether a student will continue to participate in a doctoral program.

98.     However, GAMBLE's Writing for Academic Scholarship Professor was not invited to participate in GAMBLE's faculty review.

99.     This omission is particularly unusual because GAMBLE's academic writing abilities were the reason the panel gave for its decision to dismiss GAMBLE from the program.

100.    Furthermore, GAMBLE received a grade of A in her Writing for Academic Scholarship course.

101.    On June 7, 2017, GAMBLE received a letter informing her that she was being dismissed from the Educational Leadership program due to her academic probation and low academic performance during the Spring 2017 semester.

102.    Notably, the letter directly contradicted UNF's prior correspondence regarding why GAMBLE had been placed on Academic probation. In the June 7, 2017, letter UNF stated that GAMBLE was placed on academic probation because she received two grades below a B-, citing

her D and C+ during the Fall 2016 semester. However, in the January 3, 2017 letter, UNF stated that GAMBLE was being placed on academic probation because she received <u>two grades of C or below.</u>

103.    In short, GAMBLE's dismissal from the Academic Leadership program was based on dubious hearing procedures, explicitly taking into consideration GAMBLE's protected conduct, violating UNF's own grievance procedures, and based on shifting explanations for why GAMBLE had been placed on academic probation in the first place.

**Discrimination Investigation Following GAMBLE's Dismissal**

104.    On July 1, 2017, the United States Department of Education Office for Civil Rights (OCR) received a complaint alleging discrimination on the basis of disability regarding UNF's failure to conduct a timely investigation of GAMBLE's complaint of disability discrimination pertaining to the Spring 2016 semester.

105.    OCR performed a comprehensive investigation that included review of UNF's policies as well as interviews with GAMBLE and UNF faculty.

106.    On September 28, 2018, OCR issued investigative findings that UNF failed to adopt and maintain grievance procedures that provided the prompt and equitable resolution of complaints alleging actions prohibited by Title IX and the Rehabilitation Act.

107.    OCR also found two additional, unalleged violations: that UNF discriminated against GAMBLE on the basis of her disability by dismissing her from the Educational Leadership Program and that UNF had unlawfully retaliated against GAMBLE for engaging in conduct protected by the ADA, Rehabilitation Act, and Title IX.

108.    On September 20, 2018, UNF entered into a Resolution Agreement with OCR to resolve this Complaint.

14

109.     On October 9, 2018, UNF refunded GAMBLE's Spring 2016 and Fall 2016 tuition and expenses pursuant to the Resolution Agreement.

110.     On November 9, 2018, UNF removed any and all references to suspension, probation, or dismissal from GAMBLE's record and removed the grade of "D" she received in her Fall 2016 Psycho-Social Aspects of Learning Course.

111.     However, GAMBLE was unable to continue to pursue her doctoral degree as a result of these erroneous and discriminatory entries in her record, which required her to pass over job opportunities that required her to have a doctoral degree.

112.     Furthermore, by November 2018, GAMBLE's husband had retired from his employment UNF, which meant that GAMBLE was no longer eligible to receive the tuition scholarship she had benefited from when she enrolled in 2016.

113.     Without this scholarship, GAMBLE was unable to re-enroll at UNF or afford to enroll in other doctoral programs.

114.     UNF's actions have caused GAMBLE to suffer significant financial harm in the form of lost job opportunities, injury to her reputation, tuition for two semesters of coursework which is no longer of any benefit to her, and severe physical pain and emotional distress.

## COUNT I
## REHABILITATION ACT: DISABILITY DISCRIMINATION

115.     Paragraphs 1-114 are realleged and incorporated by reference herein.

116.     Plaintiff GAMBLE is a member of a protected class, because she is disabled due to various medical conditions including fibromyalgia, vertigo, and memory loss. This condition substantially impairs major life activities by inhibiting GAMBLE's ability to, *inter alia*, walk more than two hundred feet, work, sit for long periods of time, and recall information.

117.    GAMBLE was qualified to participate in UNF's Educational Leadership Doctoral Program.

118.    UNF's Educational Leadership Doctoral program receives federal financial assistance, placing it within the coverage of Section 504 of the Rehabilitation Act of 1973.

119.    UNF denied GAMBLE the opportunity to participate in this program by dismissing her on the basis of her disabilities.

120.    By dismissing GAMBLE from the program, UNF, willfully and maliciously discriminated against GAMBLE on the basis of her disabilities in violation of Section 504 of the Rehabilitation Act of 1973.

121.    As a result of UNF's' violation, GAMBLE suffered damages, including but not limited to financial harm, injury to her reputation, injuries stemming from exacerbation of her medical condition, and emotional distress.

WHEREFORE, Plaintiffs respectfully request that this court award Plaintiffs:

(a)    compensatory damages;

(b)    punitive damages;

(c)    attorney's fees; and

(d)    any other relief that this Court deems just and proper.

## COUNT II
## REHABILITATION ACT: RETALIATION

122.    Paragraphs 1-114 are realleged and incorporated by reference herein.

123.    GAMBLE engaged in numerous instances of activity protected by the Rehabilitation Act described above, including making requests for reasonable medical accommodations,

submitting petitions to appeal her grades, and filing complaints against UNF raising disability discrimination.

124.    As a direct result of GAMBLE's protected conduct, UNF dismissed GAMBLE from UNF's doctoral leadership program.

125.    UNF's Educational Leadership Doctoral program receives federal financial assistance, placing it within the coverage of Section 504 of the Rehabilitation Act of 1973.

126.    As a result of UNF's' violation, GAMBLE suffered damages, including but not limited to financial harm, injury to her reputation, injuries stemming from exacerbation of her medical condition, and emotional distress..

WHEREFORE, Plaintiffs respectfully request that this court award Plaintiffs:

(a)    compensatory damages;

(b)    punitive damages;

(c)    attorney's fees; and

(d)    any other relief that this Court deems just and proper.

## COUNT III
## TITLE II ADA: DISABILITY DISCRIMINATION

127.    Paragraphs 1-114 are realleged and incorporated by reference herein.

Plaintiff GAMBLE is a member of a protected class because she is disabled due to various medical conditions including fibromyalgia, vertigo, and memory loss. This condition substantially impairs major life activities by inhibiting GAMBLE's ability to, *inter alia*, walk more than two hundred feet, work, sit for long periods of time, and recall information.

128.    GAMBLE was qualified to participate in UNF's Educational Leadership Doctoral Program.

129.    UNF denied GAMBLE the opportunity to participate in this program by dismissing her on the basis of her disabilities.

130.    By dismissing GAMBLE from the program, UNF, willfully and maliciously discriminated against GAMBLE on the basis of her disabilities in violation of Title II of the Americans with Disabilities Act.

131.    As a result of UNF's' violation, GAMBLE suffered damages, including but not limited to financial harm, injury to her reputation, injuries stemming from exacerbation of her medical condition, and emotional distress.

WHEREFORE, Plaintiffs respectfully request that this court award Plaintiffs:

(a)    compensatory damages;

(b)    punitive damages;

(c)    attorney's fees; and

(d)    any other relief that this Court deems just and proper.

## COUNT IV
## TITLE II ADA: RETALIATION

132.    Paragraphs 1-114 are realleged and incorporated by reference herein.

133.    GAMBLE engaged in numerous instances of activity protected by the Americans with Disabilities Act described above, including making requests for reasonable medical accommodations, submitting petitions to appeal her grades, and filing complaints against UNF raising disability discrimination.

134.    As a direct result of GAMBLE's protected conduct, UNF dismissed GAMBLE from UNF's doctoral leadership program.

135.    As a result of UNF's' violation, GAMBLE suffered damages, including but not limited to financial harm, injury to her reputation, injuries stemming from exacerbation of her medical condition, and emotional distress..

WHEREFORE, Plaintiffs respectfully request that this court award Plaintiffs:

(a)    compensatory damages;

(b)    punitive damages;

(c)    attorney's fees; and

(d)    any other relief that this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

_____*/s/ Jesse B. Wilkison*_____
Wm. J. Sheppard, Esquire
Florida Bar No.:  109154
Elizabeth L. White, Esquire
Florida Bar No.:  314560
Matthew R. Kachergus, Esquire
Florida Bar No.:  503282
Bryan E. DeMaggio, Esquire
Florida Bar No.:  055712
Jesse B. Wilkison, Esquire
Florida Bar No.: 118505
Camille E. Sheppard, Esquire
Florida Bar No.: 124518
Sheppard, White, Kachergus & DeMaggio, P.A.
215 Washington Street
Jacksonville, Florida 32202
Telephone:    (904) 356-9661
Facsimile:     (904) 356-9667
mail: sheplaw@sheppardwhite.com
COUNSEL FOR PLAINTIFF